IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY DEAN JENNINGS,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER<br>DENYING DEFENDANT'S RENEWED<br>MOTION FOR A *FRANKS* HEARING**<br><br>Case No. 1:18-cr-00051<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Defendant Jerry Jennings is currently awaiting trial on drug and firearms charges. Mr. Jennings has filed a renewed motion for a *Franks* hearing. In support of this motion, Mr. Jennings has submitted new evidence calling into question the truthfulness of information included in the affidavit used to obtain a search warrant that led to the discovery of evidence supporting some of the charges now pending against him. For the following reasons, Mr. Jennings' motion is denied.

**I**.

On November 21, 2017, Detective Brandon Beck "applied for a warrant to search the premises located at 545 Chester Street, Ogden, Utah and provided a probable cause affidavit in support of the" application. Dkt. No. 33 at 1 (cleaned up). Utah State District Court Judge Michael DiReda issued the warrant the same day, and law enforcement officers executing the warrant found "heroin and firearms [on] the premises." *Id.* at 1–2. Soon after, Mr. Jennings was indicted in federal court.

The probable cause affidavit included information Detective Beck had obtained from a confidential informant and from two traffic stops. Earlier in November, the informant had told Detective Beck that Mr. Jennings "felt that he was being watched and so he was having" other people move drugs for him, including "Peters, Hendricks, and Green." Dkt. No. 89-1 at 5.

On November 19, 2017, Detective Beck "stopped [Richard] Schultz on a traffic stop," during which Detective Beck "found approximately one pound of methamphetamine in the vehicle." *Id.* According to Detective Beck, during an interview following the stop, Mr. Schultz "stated the pound of methamphetamine came from Jerry Jennings" and he "described Jerry's house on Chester St. above Washington Blvd." *Id.* Following this stop, Detective Beck went "to the area described [by Schultz] and located two vehicles registered to Jerry Jennings. Both vehicles were at 545 Chester St. in Ogden." *Id.*

Later that evening, Detective Beck "located a known fugitive, Hendricks, and his girlfriend Osorio at Jerry Jennings house, 545 Chester St." and pulled them over after they left Mr. Jennings' house. *Id.* In connection with this stop, the police found "drug paraphernalia, . . . a baggie of methamphetamine and a baggie of heroin." *Id.* After finding this evidence, Detective Beck spoke once more to the confidential informant, who stated that Mr. Jennings "had the house on Chester St. for long time" and was "a meth and heroin user." *Id.*

In his first motion for a *Franks* hearing, Mr. Jennings challenged the affidavit's reliance on evidence obtained from the Schultz traffic stop because the statement that Mr. Schultz received the methamphetamine from Mr. Jennings was not included in contemporaneous documents relating to the traffic stop, including Detective Beck's probable cause statement and police report. *See* Dkt. No. 24-1 at 8. In her order denying this motion, Judge Parrish held that

without "any other contradictory evidence that would suggest [Detective] Beck invented the statements by Schultz . . . the court will . . . not disregard them." Dkt. No. 33 at 4.

In support of his renewed motion, Mr. Jennings submits an audio recording from the Schultz traffic stop to further undermine Detective Beck's claim that Mr. Schultz told him he had received the methamphetamine from Mr. Jennings. Mr. Jennings is correct that "Schultz [did] not say anything about Jennings" during the recording. Dkt. No. 89 at 5. Mr. Jennings also submits a declaration from Mr. Schultz stating: "I did not tell [Detective] Beck I obtained the methamphetamine from Jerry Jennings . . . [or] 545 Chester Street." Dkt. No. 89-4 at 3.

The United States maintains that Mr. Schultz did tell Detective Beck this information. It relies on a declaration from Detective Beck, in which he stated that he turned off the recording device before Mr. Schultz told him where he got the drugs to avoid the risk that "information [that could] further a potential covert investigation" of the drug's source would be "compromised through the separate [Schultz] traffic stop case." Dkt. No. 114-1 at 5. In his declaration, Detective Beck also stated that he had hoped that if Mr. Schultz "kn[ew] he was not being recorded," he would be more likely to give up his source. *Id.*

## II.

Although Mr. Jennings styles his submission as a "Renewed Motion" for a *Franks* hearing, the United States argues that it "should be construed . . . [as] a motion for reconsideration based on newly discovered evidence." Dkt. No. 94 at 1 (emphasis omitted). Mr. Jennings has not contested this characterization. *See* Dkt. No. 99. The court will accordingly consider Mr. Jennings' submission as a motion to reconsider Judge Parrish's earlier ruling.

"Although the Federal Rules of Criminal Procedure do not include any provisions for a motion to reconsider," these motions are commonly evaluated using "the same standards

governing a motion to alter or amend" in a civil case. *United States v. Sims*, 252 F. Supp. 2d 1255, 1260 (D.N.M. 2003). "In general, there are three grounds for granting a motion to reconsider: 1) if a manifest error of law or fact has been committed by the court; 2) if new evidence has been discovered; and 3) if there has been an intervening change in controlling law." *Pueblo of Zuni v. United States*, 467 F. Supp. 2d 1114, 1116 (D.N.M. 2006); *see also Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981) ("Courts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous."). Granting a motion for reconsideration on the ground that new evidence has been discovered is appropriate if the new evidence "could not have been obtained [earlier] through the exercise of due diligence." *Pueblo of Zuni*, 467 F. Supp. 2d at 1114. "Whether to grant or deny a motion for reconsideration is committed to the sound discretion of the court." *United States v. Thompson*, 125 F. Supp. 2d 1297, 1300 (D. Kan. 2000); *accord Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

      Both parties agree that the court has "wide discretion" in ruling on Mr. Jennings' motion. Mr. Jennings' only representations regarding whether the new evidence could have been obtained earlier through the exercise of due diligence are that Mr. Jennings' new counsel "obtained the . . . recording in less than three weeks" and that his previous counsel had "more than eight weeks" to discover the evidence before filing the original *Franks* motion. Dkt. No. 94 at 6 (emphasis omitted). Mr. Jennings admits "the prior attorneys could have handled the prior motion differently," Dkt. No. 99 at 2, does not even attempt to counter the United States' contention that the evidence could have been found with due diligence before the first *Franks* motion was filed, and seems to concede that the court could deny his renewed motion on this

4

basis, *see id.* at 1 (arguing that just because "the [c]ourt could deny the motion on procedural grounds does not mean it should"). Because the only evidence and arguments before the court support the conclusion that Mr. Jennings' new evidence could have been obtained earlier through the exercise of due diligence, the court concludes that reconsideration of Judge Parrish's previous ruling denying Mr. Jennings' motion for a *Franks* hearing is not warranted.

### III.

Even if reconsideration were appropriate, moreover, the court would once again deny Mr. Jennings' request for a *Franks* hearing on the merits.

"There is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). To be entitled to a *Franks* hearing, a defendant must make "a substantial preliminary showing" both that the affiant included a false statement in the affidavit supporting the warrant "knowingly and intentionally, or with reckless disregard for the truth," and that "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56.

A "district court must accord 'great deference' to the probable-cause assessment of the . . . judge who issued the warrant." *United States v. Pulliam,* 748 F.3d 967, 971 (10th Cir. 2014) (quoting *United States v. Bigelow*, 562 F.3d 1272, 1280–81 (10th Cir. 2009)). "[E]ven in a 'doubtful or marginal case,' [courts] defer 'to the [issuing judge's] determination of probable cause." *Id.* (quoting *Bigelow*, 562 F.3d at 1282). The district court reviews the issuing judge's decision only "to ensure that the judge had a substantial basis for concluding that the affidavit in support of the warrant established probable cause." *United States v. Burkhart*, 602 F.3d 1202, 1205 (10th Cir. 2010).

5

In determining whether probable cause exists, "[t]he task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When "assessing probable cause based on the totality of evidence in a warrant application . . . a judge is free to draw, 'or to refuse to draw,' any 'reasonable inferences . . . from the material supplied.'" *United States v. Moses*, 965 F.3d 1106, 1112 (10th Cir. 2020) (quoting *Gates*, 462 U.S. at 240). If the affidavit "relies on the statements of an informant, [the court must] pay close attention to the veracity, reliability, and basis of knowledge of the informant about the target of the proposed search." *Pulliam*, 748 F.3d at 971. "When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant," however. *United States v. Banks*, 884 F.3d 998, 1008 (10th Cir. 2018) (cleaned up). "No particular method of corroboration is required 'so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'" *Id.* (quoting *United States v. Mathis*, 357 F.3d 1200, 1204 (10th Cir. 2004)).

Mr. Jennings argues that "Schultz's statement . . . is by far the most powerful statement giving rise to probable cause in the Warrant Application" and that "[i]f Schultz's alleged statement is excised from the Warrant Application, the remaining statements . . . fail[] to establish probable cause [that] Jerry Jennings was selling drugs at 545 Chester Street." Dkt. No. 89 at 10–11. The court disagrees with at least the second assertion.

The affidavit provides other information suggesting that Mr. Jennings was dealing drugs. The confidential informant stated that "Peters, Hendricks, and Green [were] selling illegal narcotics for Jerry Jennings." Dkt. No. 89-1 at 5. Detective Beck found out independently that

"two vehicles registered to Jerry Jennings . . . were at 545 Chester St." *Id.* Detective Beck located Mr. Hendricks, a known fugitive, "at Jerry Jennings House, 545 Chester St.," pulled Mr. Hendricks over after he left the house, and found drug paraphernalia, methamphetamine, and heroin in Mr. Hendricks' and his girlfriend's possession. *Id.* The informant then stated that "Jerry Jennings and his wife . . . have had the house on Chester St. for a long time" and that Mr. Jennings was "a meth and heroin user." *Id.*

The confidential informant's statement that Mr. Jennings lived at 545 Chester Street was thus corroborated by Detective Beck's independent discovery of two cars registered to Mr. Jennings at this address. The informant's statement that Mr. Hendricks was selling drugs for Mr. Jennings was likewise corroborated by Detective Beck's subsequent discovery of Mr. Hendricks leaving 545 Chester Street with drugs and drug paraphernalia in his and his girlfriend's possession. Considered together, the confidential informant's statements, the presence of the vehicles registered to Mr. Jennings at 545 Chester Street, and the evidence obtained from the Hendricks traffic stop showed more than "a fair probability that contraband or evidence of a crime [would] be found" at 545 Chester Street. *Burkhart*, 602 F.3d at 1205 (quoting *Gates*, 462 U.S. at 238). As Judge Parrish explained in her order denying Mr. Jennings' first motion for a *Franks* hearing, an issuing judge "can absolutely infer that drugs and guns are likely to be stored at a home where an alleged drug dealer lives and where multiple criminals have been spotted." Dkt. No. 33 at 7. Thus, even if the court were to excise the alleged false statements from the affidavit, the warrant in this case would still be supported by probable cause.

\*   \*   \*

For the foregoing reasons, Mr. Jennings' renewed motion for a *Franks* hearing is **DENIED**.

**IT IS SO ORDERED.**

                                DATED this 28th day of January, 2021.

                                BY THE COURT:

                                */s/ Howard C. Nielson, Jr.*

                                Howard C. Nielson, Jr.
                                United States District Judge